No. 4767.

Court of Appeal, Parish of Orleans.

ARBUTNOT, LATHAM & CO VS. THE CAGE. DREW CO.

STATE OF LOUISIANA.

1. Property in trade marks exists independently of Act 49 of 1898 or any other statute, and there is ample protection therefor both in law and in equity outside of the provisions of that statute.

2. Corporations are persons in the eyes of the law and may register their trade marks under Act 49 of 1898, as well as individuals.

3. No hard and fast .rule can be laid down by which 'it can be determined as a matter of law in what cases particular words or combinations may or may not be used as a valid trade mark.

4. Where the connection between the underlying idea in a ·trade mark and the wares with which it is associated existed independently of any skill or industry .devoted thereto by the claimant, he can have no exclusive right therein. But where that connection is due exclusively to the thought and labor of the claimant, the association of ideas, being his own creation, becomes exclusive property which he may lawfully use as a trade mark.

5. Hence the validity vel non of a particular trade mark is a question of fact rather than of law, and depends for its solution in the circumstances of the particular case.

6. Held. That the worlds "Premium Brand" as a trade mark for roasteo coffee is a valid trade mark and was properly registered.

On Rule Against Globe Coffee and Molasses Company.

Appeal from Civil District Court, Division "E."

Clegg, Quintero & Gidiere, C. F. Claiborne, W. McL. Fayssoux, Attorneys.

Sneed, Ory, Cahn, Zacharie and Hubert, Attorneys.

Solomon Wolff, Attorney for Appellant.

ST. PAUL, J. The Cage Drew Company went into the hands of receivers and on June 30, 1902, defendant in rule wrote the receivers and offered to purchase the brand of coffee known as the "Premium" Brand, formerly used by the Cage Drew Company, together with the duly registered Trade Mark and all rights thereto and all empty cans, packages, and all unfilled orders on hand or to be received.

On July 1, 1908, and again on July 10, 1908, the Receivers asked and obtained permission of the court to accept the offer. But defendant refused to comply with its engagement, and this rule was taken to compel it to do so. The rule was made absolute and the defendant appeals.

The answer to the rule sets up a number of defenses, only two of which are urged in the appeal. They are in substance as follows:

. 1. That no corporation has the right to register its trade mark under the provision of Act 49 of 1898.

2. That the words "Premium Brand" as applied to roasted coffee can not be appropriated by any one exclusively, and hence cannot constitute a valid trade mark.

Hence there was error on the part of defendant when it made its offer and it is not bound thereby.

## I.

It is elementary that the right of property in trade marks is not derived from Act 49 of 1898 or from any statute whatever. but is a so-called "common law" right which has existed and been recognized and protected by the courts of all commercial nations from time almost immemorial.

Nor does the statute of 1898 purport to give to the one registering such trade mark any greater right of property therein than he would have had without such registry; or deny to any one who fails to register a trade mark any right or remedy which he would have had, had the statute not been passed. On the contrary, the act simply affords additional remedies against those who imitate the trade marks of others. Moreover, the act applies to unregistered as well as registered trade marks, does not make registry obligatory, and gives no other effect to such registry than as proof of the adoption of such trade mark, other proof is not excluded, however.

From this it follows that the property right in a trade mark and its principal value as an asset are wholly independent of the provisions of Act 49 of 1898.

But error as to the thing which is the subject of the contract does not invalidate it unless it bears on some substantial quality of the thing (C. C. 1842), and the error bears on the substantial quality of the object only when such quality is that which gives it its greatest value (C. C. 1844).

It is therefore clear that even 'if the provisions of Act 49 of 1898 do not apply to the trade marks of corporations, the error under which defendant labored in believing that they did, which is error of law (C. C. 1822), does not invalidate the contract which it made with the receivers. For the fact is that the trade mark is none the less valuable as a commercial asset, and there was ample protection for the owner both in law and in equity. If the fraudulent use of such trade mark cannot be punished by fine and imprisonment after trial by jury it can none the less be enjoined and the violation of the injunction can be punished in the same manner even without the necessity of submitting the question to a jury. All the other remedies provided by the act exist to all intents and purposes independently thereof and just as effectively.

But we are by no means inclined to think that the provisions of Act 49 of 1898 do not extend to corporations and the trade marks of corporations. True, the act does not in terms mention the trade marks of corporations, but uses the words "persons or associations and unions of workingmen."

But the term *person* includes corporations, they are not natural persons, but they are "intellectual bodies" created by law (C. C. 427), and are so defined and treated of in that part of our Code which treats of *persons*" (Civil Code, Book I, of Persons). Moreover, the highest judicial authority in the land has ..declared that a corporation may be a citizen, but since a citizen cannot be a *"thing,"* it necessarily follows that a citizen must be "a person."

We are of opinion that there is no merit in the first matter of defense.

## II.

Nor do we think that there is any merit in the contention that the term "Premium Brand" cannot lawfully be used as a trade mark for roasted coffee.

No hard and fast rule can be laid down by which it can be determined as a matter of law in what cases particular words or combinations may or may not be used as a trade mark.

Apart from a few general rules based on the broad principles . of morality and public law rather than on the narrow tenets of private law there may be said to be almost no law whatsoever on the subject.

It is all embraced in the obligation to trade fairly.

Hence no man may appropriate to his exclusive use that which should belong to all alike, as the common words of a language necessary to express one's thoughts. No man, therefore, has the right to select as a trade mark such words or combinations of words that if he be permitted their exclusive use, others trading in the same wares could not describe their own in the common phrases of the trade. Thus no man may take as his exclusive trade mark such words as are merely descriptive of the qualitise and substance of an article in which all men may trade alike.

On the other hand, every man has a right to the product of his own industry and skill. Hence a man may choose some word or combination which is only remotely or not at all descriptive of the quality or substance of an article, and by association make the words distinctive of the particular article in which he deals. But his choice of words must not interfere with the right of others to offer goods the equal of his own and set forth in ordinary language, the qualities which make them so.

In short, certain words have, independent of the skill and industry of any individual a direct and ordinary connection with certain classes and qualities of merchandise. This connection or association of ideas is the common property of all, and once established no man can appropriate it to his exclusive use.

On the other hand, one may arbitrarily associate two ideas which have not previously been connected, and selecting some word or phrase which has never before been associated with certain wares by his skill and industry bring it about that this same word or phrase shall thereafter become intimately associated with and distinctive of the particular wares and merchandise in which he deals. This association of ideas being the product of his own thought and labor, belongs to him, and he may use it as his trade mark.

It follows, therefore, that the enquiry as to the validity of a trade mark must always be whether the association between the idea underlying the trade mark and the wares which it is intended to distinguish, be the result of the claimant's own thought and labor or of the common thought and industry of all alike. In the first case it is a valid trade mark, in the latter it is not.

That inquiry involves only a question of fact, and must necessarily, like all other questions of fact, depend for its solution

upon the circumstances of each particular case.

We have no difficulty in concluding that the term "Premium Brand" has no other connection with the qualities and superior excellence of roasted coffee than that which it derives from the fact of its having been used as a trade mark by the Cage Drew Company, and its predecessors, the Cage Drew Coffee Company.

Premium Brand Coffee unless it is used to distinguish the particular coffee put on the market by those companies conveys to the mind no meaning whatsoever.

It certainly does not convey to our minds the meaning that premiums or prizes accompany each package; and that it was not very apt to convey that particular meaning to any one else is best evidenced by the fact that, like the little girl who labeled her drawing "this is a horse," the manufacturers thought it necessary to place upon each package a notice that it did contain a valuable premium.

It is not pretended that any other manufacturer can not do to the same.

The idea conveyed, if any, is rather that of having somewhere and at some time received a reward for excellence, and that same idea if attractive to any other manufacturer can be conveyed in numerous other ways without in the least infringing on this trade mark. Thus, First Prize, Gold Medal, Blue Ribbon or Banner, and other like terms, all convey the same idea.

We certainly cannot see in what manner this particular trade mark interferes with any fair competition and this being the case it may validly be used.

The judgment of the District Court appears to us correct, and it is *affirmed*.

June 15, 1909.

Rehearing refused, June 28, 1909.

Writ refused by Supreme Court, October 13, 1909.